**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FS&S HOLDINGS, LLC; COBCOM INVESTORS, LLC; PATRIOT PARK ASSOCIATES, LLC, | : | **OPINION & ORDER** |
| Plaintiffs, | : | Civ. No. 10-2923 (WHW) |
| v. | : | |
| NICHOLAS SKULTETY; INVESTOR RESOURCE MANAGEMENT, INC.; AMERICAN PARAMOUNT, INC.; CESAR NUNEZ; JOHN DOES 1 THROUGH 10, and ABC GROUPS 1 THROUGH 10, | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Plaintiffs FS&S Holdings, LLC, Cobcom Investors, LLC and Patriot Park Associates, LLC move under Federal Rule of Civil Procedure 55(b)(2) for default judgment against defendants Nicholas Skultety, American Paramount, Inc., Investor Resource Management, Inc. and Cesar Nunez. These defendants have failed to appear or file opposition to this motion. Pursuant to Federal Rule of Civil Procedure 78, the motion is decided without oral argument. Because the Court does not have personal jurisdiction over any of the defendants, the motion is denied.

1

**NOT FOR PUBLICATION**

## FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, the defendants in this case "employed a sophisticated and devious scheme and artifice to successfully defraud the Plaintiffs of more than $1.4 million." Compl. ¶ 16. The plaintiffs allege that the fraudulent scheme "utilized false and fictitious documentation and employed a web of lies and deceptions." Compl. ¶ 16. To accomplish this alleged fraud, the defendants employed what the plaintiffs describe as a "proof of funds" scheme. Compl. ¶ 17.

The plaintiffs are three South Carolina-based companies owned by two real estate developers, Harold P. Tuttle and Gregory Parsons. Compl. ¶¶ 1-3, 18-20. The three plaintiffs were involved with the purchase and plan to develop Cobblestone Village, a 27-acre parcel of commercial property in Goose Creek, South Carolina. Compl. ¶¶ 18-20.

Sometime around 2008, the plaintiffs sought approximately $25 million in financing to fund development of Cobblestone Village. But, as a result of the economic downturn, were unable to get financing from banks or other conventional sources. Compl. ¶ 21. So, they turned to non-conventional sources. Their quest for funding is the subject of this lawsuit.

First, the plaintiffs sought help from the Lambert Clark Group LLC, an Illinois-based company. Two individuals associated with Lambert Clark, Kevin Reed, who resides in Illinois, and James Chatham II, who resides in Texas, allegedly told the plaintiffs that Lambert Clark could, through an elaborate transaction, obtain the funds the plaintiffs sought in exchange for a $250,000 fee. The plaintiffs paid this fee, but never received the loan they were promised. Compl. ¶¶ 23-30.

When this did not work, Chatham and Reed suggested an even more elaborate financing scheme for obtaining loans. Compl. ¶¶ 29-35. A $1 million fee was to be paid to a private lender

NOT FOR PUBLICATION

in return for that lender posting a $133 million "proof of funds"[1] to the bank account of a Lambert Clark affiliate, LCG Global Assets Limited, a Texas-based entity. Compl. ¶¶ 10, 32-33. This proof of funds would allow Lambert Clark to establish a trading relationship with European banks in order to buy securities and resell them in the United States at a significant profit. Compl. ¶ 34. Lambert Clark would then use the profits to lend $30 million to the plaintiffs. Compl. ¶ 34.

According to the complaint, Chatham and Reed persuaded the plaintiffs to deposit the $1 million fee in "an escrow account with an escrow agent of their choosing." Compl. ¶ 35. The plaintiffs "selected an escrow agent in New York City, and in fact advanced the $1 million fee, which was deposited and held in escrow in a New Jersey bank." Compl. ¶ 35.

The $133 million proof of funds was to be issued by defendant Nicholas Skultety and his corporation American Paramount, Inc. (also named as a defendant). Skultety resides in California, where American Paramount is based. Compl. ¶¶ 4,6, 37. At a meeting in Skultety's Los Angeles office, he allegedly told the plaintiffs that he could easily assemble $133 million from relatives and business associates in exchange for a $1 million fee. Compl. ¶¶ 38-39.

The plaintiffs and Skultety, Chatham and Reed signed contracts which described this transaction. The plaintiffs then paid Skultety the $1 million fee. Compl. ¶ 41. According to the complaint, Skultety's banker, defendant Cesar Nunez, a Wells Fargo employee residing in California, emailed the plaintiffs what appeared to be official Wells Fargo documents confirming that $133 million had been deposited in LCG's account. Compl. ¶ 13, 42-44. Although the

---

[1] A "proof of funds" letter indicates that a person holds money in accounts with well-known banks. *See United States v. Mendoza*, 09-CR-292, 2010 U.S. Dist. LEXIS 88114, at *2 (E.D.N.Y. Aug. 26, 2010); *see also United States v. Thomas*, 377 F.3d 232, 235 n.1 (2d Cir. 2004) (the defendant "explained that a proof of funds was a bank's identification of how much money was in a particular account").

3

**NOT FOR PUBLICATION**

plaintiffs fulfilled their end of the deal, the $30 million loan from Lambert Clark never materialized.

When the plaintiffs complained to Skultety, he ultimately promised to loan them $21 million directly in exchange for an additional fee of $131,000, which the plaintiffs paid. Compl. ¶¶ 50-51.

The plaintiffs never got their loan and their demands for return of the various fees went unanswered. The plaintiffs paid almost $1.4 million and received nothing in return.

\*   \*   \*

In June 2010, the plaintiffs sued Skultety, Nunez, Catham, Reed, American Paramount, Lambert Clark, LCG Global Assets and Investor Resource Management, Inc. (another California-based entity allegedly affiliated with Skultety). The plaintiffs alleged violations of the RICO Act and claims of state law fraud, conspiracy, breach of contract and unjust enrichment.

Lambert Clark and the defendants associated with it appeared and filed motions to dismiss for lack of personal jurisdiction. The plaintiffs dismissed them from the case soon afterward.

Nunez, Skultety, American Paramount and Investor Resource Management have not appeared. The Clerk entered default against these defendants and the plaintiffs now move for default judgment. The Court ordered that the plaintiffs show why this case should not be dismissed for lack of personal jurisdiction, venue or both. The Court considers the plaintiffs' response along with their motion for default judgment.

**NOT FOR PUBLICATION**

## STANDARD OF REVIEW

When a defendant fails to appear, a district court is authorized to enter a default judgment based solely on the fact that the default has occurred. *Anchorage Assocs. v. Virgin Is. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). When deciding a motion for default judgment, a court should accept as true the well-pleaded allegations of the complaint. *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, Civ. No. 05-3452, 2008 U.S. Dist. LEXIS 63600, at *13 (D.N.J. July 31, 2008); *Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC*, Civ. No. 06-1581, 2007 U.S. Dist. LEXIS 41997, at *8 (D.N.J. June 8, 2007).

## DISCUSSION

### A. Legal Standard for Personal Jurisdiction

Before entering a default judgment, "the Court must address the threshold issue of whether it has personal jurisdiction . . . over the parties." *Acosta v. Nat'l Packaging, Inc.*, Civ. No. 09-701, 2010 U.S. Dist. LEXIS 75847, at *3 (D.N.J. July 28, 2010) (Brown, Jr., C.J.) (citation omitted).

When deciding matters of personal jurisdiction, this Court looks to New Jersey law to determine whether it has jurisdiction over the defendants. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Id.*

A district court may exercise either general or specific personal jurisdiction over a defendant. *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008). General jurisdiction exists where the defendant maintains continuous and systematic contacts with the forum. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The

plaintiffs do not contend that any of the defendants are subject to general jurisdiction in New Jersey, but maintain that they are subject to specific jurisdiction here.

Specific jurisdiction exists only where the defendant has sufficient minimum contacts with the forum state such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The "constitutional touchstone" is whether the defendant purposefully established those minimum contacts. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). "A court must find that there was some act by which the defendant 'purposefully availed itself' of the privilege of conducting activities within the forum." *Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

**B. Analysis**

In the plaintiff's twenty-seven page complaint,[2] New Jersey is mentioned once. The bank in which the plaintiffs deposited the $1 million fee that was later sent to Skultety was located in New Jersey.[3] It is not clear why the plaintiffs chose a bank in New Jersey to deposit the funds. But, what the complaint does make clear is that it was the plaintiffs and not any of the defendants that chose the bank: "[The defendants] persuaded [the plaintiffs] to advance this fee by offering to have it deposited in an escrow account with an escrow agent *of their choosing*. [The plaintiffs]

---

[2] The Court relies on the complaint for allegations concerning personal jurisdiction because the plaintiffs have not submitted any evidence of the defendants' contacts with New Jersey (if any).

[3] According to the supplemental letter brief filed by the plaintiffs, the bank was a branch of Chase located in Garfield, New Jersey.

**NOT FOR PUBLICATION**

selected an escrow agent in New York City, and in fact advanced the $1 million fee, which was deposited and held in escrow in a New Jersey bank." Compl. ¶ 35 (emphasis added). Additionally, the complaint does not allege that Skultety or any of the other defendants themselves contacted the bank to retrieve the funds. Instead, the complaint is clear about how the defendants received the funds: the plaintiffs themselves "paid Skultety $1 million." Compl. ¶ 41.

In their supplemental letter brief the plaintiffs maintain that specific jurisdiction is appropriate here because the "target of the fraud was the money placed in escrow in New Jersey." Pl. Ltr. Br. 4. This is not enough. As the Supreme Court has held, the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the *unilateral activity of another party* or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985) (citations and some quotation marks omitted) (emphasis added).

Here, it was the plaintiffs and not the defendants who chose to deposit the money in New Jersey. It was the plaintiffs, not the defendants, who made payments from the New Jersey account. There is no allegation that the defendants instructed, encouraged or suggested that the plaintiffs use a New Jersey bank account. Here, it is the actions of the plaintiffs, not the defendants, that the plaintiffs seek to use as the basis of specific jurisdiction.

## CONCLUSION

None of the defendants had any contact with New Jersey and so this Court does not have personal jurisdiction over them. Because this Court does not have personal jurisdiction over any of the defendants, the plaintiffs' motion for default judgment must be denied.

**NOT FOR PUBLICATION**

     **IT IS ORDERED** that plaintiffs' motion for default judgment is **DENIED**.

March 28, 2011

                                       **/s/ William H. Walls**
                                       United States Senior District Judge